IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PUBLIC SERVICE COMPANY OF NEW MEXICO,
and MELLON BANK, N.A., Trustee of the Public
Service Company of New Mexico Master
Decommissioning Trust,

        Plaintiffs,

vs.                                      No. CIV 98-642 MV/LCS

JOHN LYONS, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Motion of Defendant Towers, Perrin, Forster &
Crosby, Inc. to Dismiss the Claim of Plaintiff Mellon Bank for Failure to State a Claim **[Doc. No.
79]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise
fully informed, finds that the motion is not well taken and will be **DENIED**, as explained below.

## BACKGROUND

The Public Service Company of New Mexico ("PNM") has partial ownership and leasehold
interests in the Palo Verde Nuclear Generating Station located in Maricopa County, Arizona. Federal
regulations require PNM to assure that sufficient funds will be available for dismantling or
"decommissioning" the units of the power plant at the end of their useful lives. Specifically, PNM
must set aside and have available over $500 million to decommission the three units of the power
plant in the years 2024, 2025, and 2027.

In order to meet this obligation, PNM created a settlor-directed, revocable Decommissioning Trust on July 31, 1987. On March 15, 1996, this Trust was reconstituted as the Public Service Company of New Mexico Master Decommissioning Trust ("Decommissioning Trust"), with Mellon Bank named as trustee. The Trust Agreement specifically vests all authority for investment decisions regarding the Decommissioning Trust in PNM and its appointed investment manager(s), providing that the trustee shall have no authority or responsibility regarding investments and shall not be deemed a party to any agreement with the investment manager(s).

According to the Complaint, PNM relied on the advise of several of the named Defendants and invested the trust corpus into an insurance investment program, known as the Cost of Money Reduction Program ("ComRep"). During 1987 and 1988, PNM used the trust corpus to purchase 1,729 life insurance policies, issued by several other named Defendants, which are currently held by Mellon Bank as trustee. PNM made this investment based on representations that the investment would produce sufficient returns to fully fund PNM's decommissioning costs.

PNM retained Defendant Towers, Perrin, Forster & Crosby, Inc. ("Towers") from July 1989 to June 1992 to audit the ComRep insurance investment in order to verify that it would accumulate sufficient funds to satisfy PNM's decommissioning costs. Towers provided PNM a report dated October 11, 1991 which opined that the investment would be sufficient to meet the decommissioning costs. PNM subsequently discovered that the investment would in fact fall short of the decommissioning costs by more than $300 million.

PNM and Mellon Bank, as trustee of the Decommissioning Trust, filed the instant action in New Mexico State Court on March 31, 1998. The case was removed to federal court on May 29, 1998. Currently pending is Plaintiffs' motion to remand based on lack of diversity of the parties.

Plaintiffs raise numerous claims against the Defendants who recommended the investment, the brokers who sold the insurance policies and the companies who issued the policies. Plaintiffs raise a single claim of negligence against Defendant Towers which is the subject of the instant motion to dismiss. Plaintiffs assert that Towers negligently performed its duties and as a result caused damage to PNM and the Decommissioning Trust. Towers challenges solely that part of the complaint pressed by Mellon Bank, asserting that the Plaintiffs cannot establish that Towers owed a duty to Mellon Bank. Because Towers and Mellon Bank are the only two parties with identical citizenship, this motion must be resolved before the Court may rule on the pending motion to remand.

## STANDARD OF REVIEW

A court may not dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal

rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## ANALYSIS

Towers argues that Plaintiffs cannot establish that it owed a duty to Mellon Bank for two reasons: (1) the Decommissioning Trust for which Mellon Bank is trustee was not in existence during Towers engagement with PNM; and (2) the Decommissioning Trust was not an intended beneficiary of Towers' work for PNM. These arguments will be addressed in turn.

### 1.      The Existence of the Decommissioning Trust During Towers Engagement

Towers argues first that the Decommissioning Trust for which Mellon Bank is trustee did not exist at the time it rendered its services to PNM. This argument is without force. Tower acknowledges that the "original" Decommissioning Trust was in existence during its engagement with PNM. The corpus of this "original" Trust was the ComRep life insurance policies and Towers job was specifically to audit the performance of this trust corpus. It is true that following the completion of Towers work, the trust corpus was transferred into a newly named trust fund with Mellon Bank appointed as the new trustee. This "second" Decommissioning Trust is nothing more than a continuation of the "original" Decommissioning Trust, with the same trust corpus and a new trustee. Mellon Bank, as the successor trustee to the original trust "can maintain the same actions or suits as could be maintained by the original trustee." Restatement (Second) Trusts § 280 ill. j. at 41. *see also* N.M. Stat. Ann. § 45-7-401(D)(25) (providing that the trustee has the power to prosecute or defend legal claims for harm to the trust); Fed. R. Civ. P. 17(a) (trustee may sue without joining beneficiary). Towers' attempt to characterize the Decommissioning Trust as "nonexistent" at the time of its

4

performance is unavailing, particularly given the references in Towers' own report to the "Decommissioning Trust." Mellon Bank, as the current trustee of the Decommissioning Trust and therefore as legal tittle holder of the trust corpus which was the subject of Towers audit, may properly maintain any action for negligent damage to the trust property. Restatement (Second) Trusts §§ 280-82; *see also Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998).

## 2.   Decommissioning Trust as an Intended Beneficiary of Towers' Services

Though ultimately unavailing, Towers' second argument has more substance. Plaintiffs have alleged negligence in the performance of professional services, i.e., malpractice, by Towers. *See* Complaint ¶ I, "Ninth Claim for Relief by Plaintiffs for Negligence Against Defendant Towers." Any negligence claim requires as a basic element a duty owed by the defendant to the plaintiff. *Leyba v. Whitley*, 120 N.M. 768, 772, 907 P.2d 172, 176 (1995). As Towers correctly points out, any duty which Towers owed to the Plaintiffs must arise from its contractual obligation to perform the specified services. *Id.* Towers contract for services was solely between it and PNM; neither the Decommissioning Trust nor the trustee were parties to the agreement. Towers therefore had no contractual duty to the Decommissioning Trust. Plaintiffs must thus find some other basis for its position that Towers duty legally extended to the Decommissioning Trust.

Resolution of this issue requires a careful analysis of the elements of the malpractice claim pressed by Plaintiffs. Plaintiffs themselves appear to be confused about the elements of the claim they have raised against Towers. Analogizing the work conducted by Towers to an audit performed by an accountant, Plaintiffs devote much of their response brief to arguing the elements of negligent misrepresentation as elucidated in malpractice claims against accountants. Negligent misrepresentation, however, is a different and distinct cause of action from negligence. Although both

are commonly plead in cases alleging malpractice in the provision of intellectual services-- and both

are commonly confused by lawyers, courts, and commentators-- each claim has distinct elements. *See*

*Bily v. Arthur Young & Co.*, 834 P.2d 745, 768 (Cal. 1992) (noting confusion between separate torts

of negligence and negligent misrepresentation); Pacini and Sinason, Gaining a New Balance in

Accountants' Liability to Nonclients for Negligence: Recent Developments and Emerging Trends,

103 Com. L.J. 15, 17 ftnt. 11 (same); Thomas G. Mackey, Accountants' Liability After Bily v. Arthur

Young & Co.: A More Equitable Proposal for Third Party Recovery, 45 Hastings L.J. 147, 160-62

(1993) (same). In this case, the distinction between negligence and negligent misrepresentation is

crucial to the resolution of the question of whether Towers owed a duty to the Decommissioning

Trust.[1]

> In order to state a cause of action for negligent misrepresentation a plaintiff must allege that:

> (1) the defendant . . . negligently makes a false statement to a plaintiff . . . to whom a duty of care is owed; (2) the defendant . . . intends that the statement will be acted upon by the plaintiff . . . ; (3) the defendant has knowledge that the plaintiff . . . will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff . . . justifiably relies on the statement; (5) the plaintiff . . . suffers actual damage; and (6) the damage was proximately caused by the defendant's conduct.

*See* Pacini and Sinason, 103 Com. L.J. at 20; N.M. Uniform Jury Instructions (civil) 13-1632; *Bily*,

834 P.2d at 768. Negligent misrepresentation thus requires that the defendant knew that the plaintiff

was likely to rely on the statements made and actual reliance by the plaintiff on the statements made.

---

[1] In addition, Plaintiffs' analogy to the law of malpractice with regards to accountants is not helpful. Accountants have historically been afforded a layer of legal protection from the malpractice claims of non-clients over and above that of other professionals. *See In re American Principals Holdings, Inc. Securities Litigation*, 1987 WL 39746, slip op. 18 (S.D. Cal. 1987); Mackey, Accountants' Liability, 45 Hastings L.J. at 160-62. As Defendants state in reply, Towers is not an accounting firm and was not retained to perform accounting services. It is therefore appropriate to apply the generalized body of law applying to malpractice claims against professionals rendering intellectual services, rather than the specialized body of law developed for accountants.

These two elements serve to limit the extent of liability of professionals providing intellectual services to distant non-clients who eventually make use of their advice or reports. *Bily*, 834 P.2d at 768-772; Mackey, Accountants' Liability, 45 Hastings L.J. at 160-62.

In this case, Plaintiffs have no hope of establishing that Mellon Bank, as trustee of the Decommissioning Trust, relied on the report made by Towers. Under the provisions of the Trust Agreement, Mellon Bank had no authority to make investment decisions regarding the Trust. Plaintiffs have not alleged and evidently cannot prove that a copy of the Towers report was even forwarded to Mellon Bank who, given their limited authority over the Trust, would apparently have no use for such information. Thus, Plaintiffs have failed to state a cause of action for negligent misrepresentation. However, Plaintiffs have not plead a complaint pursuant to negligent misrepresentation, but, rather, simply negligence. *See* Complaint ¶ I.

Simple negligence, as distinguished from negligent misrepresentation, requires a showing that the defendant owed a duty of reasonable care to the plaintiff, that the defendant breached that duty, and that defendant's breach was the proximate cause of plaintiff's injuries. W. Prosser, Law of Torts, § 30 (4th ed. 1971); N.M. Uniform Jury Instructions (civil)13-1601; *Bily*, 834 P.2d at 772. In the context of a claim for professional malpractice, the duty derives from the arrangement between the parties for the provision of services by the defendant. *Leyba*, 907 P.2d at 176; Herbert Bernstein, Civil Liability for Pure Economic Loss Under American Tort Law, 46 Am. J. Comp. L. 111, 114-17 (1998). In the case at bar, for example, Towers owed a duty to PNM as a result of its engagement contract to perform professional services for PNM.

How far a professional's duty extends to non-clients who are not in contractual privity with the defendant, such as the Decommissioning Trust in this case, has been a vexing question in American law. As Defendants correctly recognize, the leading New Mexico case on the duty of a

professional to a non-client is *Leyba v. Whitley*, 120 N.M. 768, 907 P.2d 172 (1995). The plaintiff in *Leyba*, a minor child, was the sole statutory beneficiary of a wrongful death action. Defendants, the attorneys for the representative of the estate (the mother of the decedent) were aware of this fact when they entered into a settlement agreement regarding the case. Defendants nevertheless released the proceeds of the settlement to the representative of the estate rather than the statutory beneficiary. After plaintiff discovered that the representative had dissipated the funds, he pursued a malpractice claim against the attorneys. *Id*. at 174.

The New Mexico Supreme Court rejected any argument that the attorney's duty was limited strictly to those in contractual privity, holding instead that the duty extended to all intended third-party beneficiaries of the attorney-client relationship. *Id.* at 773. In reaching this conclusion, the New Mexico Court analyzed numerous decisions from other States, including two seminal professional malpractice cases from California, *Biakanja v. Irving*, 320 P.2d 16 (Cal. 1958), and *Lucas v. Hamm*, 364 P.2d 685 (Cal. 1961). *See Leyba*, 907 P.2d at 775. *Biakanja* involved a malpractice claim raised by intended beneficiaries of a will against a notary public who had drafted the will but failed to insure that the will was properly attested. The *Biakanja* Court elucidated the following five factors to be balanced by the court in determining when a professional owes a duty to a non-client:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, . . . and [5] the policy of preventing future harm.

*Biakanja*, 320 P.2d at 19; *see also Wisdom v. Neal*, 568 F.Supp. 4, 7-8 (D.N.M. 1982) (applying same factors). To these five factors, the *Lucas* Court added an additional consideration for cases raising claims against attorneys: "whether recognition of liability . . . would impose an undue burden on the profession." *Lucas*, 364 P.2d at 688.

The New Mexico Supreme Court adopted the six factor balancing test articulated in *Biakanja* and *Lucas* with the modification that the New Mexico Court described the first factor, intent to benefit the non-client plaintiff, as a threshold requirement. *Leyba*, 907 P.2d at 775-76. Absent an intent to benefit the non-client, no further inquiry is need; given a showing of intent to benefit the non-client, the court is to balance the remaining factors in determining whether a duty extends from the professional to the non-client plaintiff. *Id.* This intent to benefit element, as with the other factors elucidated by the *Biakanja-Lucas* Courts, function to limit the reach of a professional's liability solely to those individuals actually contemplated by the parties as the beneficiaries of the services when rendered. *Id.*

Several other States and commentators have adopted the *Biakanja-Lucas* balancing test as the standard for determining when a professional's duty extends to a non-client. *See Leyba*, 907 P.2d at 775-76 (discussing cases from other States); *CCDC Holding, LTD., v. Smith*, 1988 WL 384417, slip op. 7 (D.Kan. 1988); *Wisdom*, 568 F.Supp. at 7-8; Marianne B. Hill, Tort Law (Legal Malpractice)-- Attorneys May Owe a Duty to Beneficiaries Regardless of Privity: Leyba v. Whitley, 26 N.M. L. Rev. 643, 646; Bernstein, Civil Liability for Pure Economic Loss, 46 Am. J. Comp. L. at 116-17. Applying this test, numerous courts have recognized the duty of an individual drafting a will to the intended beneficiaries of the will. *See* Richard B. Urda, Jr., Malpractice Claims in Estate Planning, 41-MAR Res Gestae 12, 12 ftnt 2 (discussing *Charleston v. Hardesty*, 839 P.2d 1303 (Nev. 1992); *Schick v. Bach*, 238 Cal.Rptr. 902 (Ct. App. 1987); *Morales v. Field*, 160 Cal. Rptr. 239 (Ct. App. 1979)); 57A Am. Jur. 2d Negligence § 93 (1989) (discussing cases). Other courts have recognized a duty of attorneys who represent a trustee to the beneficiaries of the trust. *See* Urda, Jr., Malpractice Claims, 41-MAR Res Gestae at 12 ftnt 2; 57A Am. Jur. 2d Negligence § 93.

Although they spend much time arguing the elements of intentional misrepresentation, Plaintiffs in the case at bar have in fact alleged in their complaint solely negligence against Towers.[2] *See* Complaint ¶ I. To prove this claim, Plaintiffs do not need to prove that Mellon Bank actually relied on the report generated by Towers or was intended to receive the report itself. *See In re American Principals Holdings, Inc. Securities Litigation*, 1987 WL 39746, slip op. 18 (S.D. Cal. 1987). Rather, Plaintiffs must show, as a threshold matter, that the contract for services between PNM and Towers was intended to benefit the Decommissioning Trust, and that the remaining *Leyba* factors support a finding that a duty existed. *See Leyba*, 907 P.2d at 775-76. Again, it is not the generating of the report which must have been done directly for review by the trustee, but rather the provision of services between PNM and Towers-- which includes the provision of advice as to the status of the trust-- which the parties must have intended to benefit the Decommissioning Trust. *Id.*; *see also In re American Principals Holdings*, 1987 WL 39746, slip op. 18; *CCDC Holding, LTD.,* 1988 WL 384417, slip op. 7.

Plaintiffs have plead sufficient facts to establish that the Decommissioning Trust was the intended beneficiary of the service contract between Towers and PNM and that the facts otherwise support finding a duty to the Trust under *Leyba* to resist a motion to dismiss for failure to state a claim. Towers was employed by PNM to audit the performance of the trust corpus and to render a professional assessment of whether the trust investment would produce sufficient returns to meet the future decommissioning costs. The performance of the trust investment and "well being" of the Decommissioning Trust were therefore the only subject of the agreement between Towers and PNM.

---

[2]Plaintiffs did in fact allege negligent misrepresentation against all of the other Defendants but specifically excluded Towers from this claim. *See* Complaint ¶ J, "Tenth Claim for Relief for Negligent Misrepresentation by Plaintiffs Against al Defendants Except Towers."

Towers report refers specifically to the Decommissioning Trust several times. Based on the advice and opinion rendered by Towers, according to the Complaint, PNM made certain investment decisions which had the effect of harming the Decommissioning Trust. These facts are sufficient to entitle Plaintiffs to the opportunity to prove that Towers did owe a duty to the Decommissioning Trust. *See Leyba*, 907 P.2d at 775-76; *Scheuer*, 416 U.S. at 236. Dismissal of the claim by Plaintiff Mellon Bank against Defendant Towers is therefore not appropriate. *H.J. Inc.*, 492 U.S. at 249-50.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Motion of Defendant Towers, Perrin, Forster & Crosby, Inc. to Dismiss the Claim of Plaintiff Mellon Bank for Failure to State a Claim **[Doc. No. 79]** is hereby **DENIED**.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiffs:
        David F. Cunningham
        Charles Robert Peifer

Attorneys for Defendants:
        John M. Eaves
        Jeffrey R. Brannen
        Luis G. Stelzner
        Mel E. Yost
        Lyman G. Sandy